[No. B039963. Second Dist., Div. Two. June 5, 1990.]

In re ALEXANDER B., A Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
ALEXANDER B., Defendant and Appellant.

.

COUNSEL

Hebe Barrera, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, Richard L. Walker and Donald E. DeNicola, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

FUKUTO, J.—

## INTRODUCTION

Alexander B., a minor, appeals from an order declaring him a ward of the juvenile court (Welf. & Inst. Code, § 602) following a finding that he violated Penal Code section 12020, subdivision (a) by concealing upon his person a dirk or dagger. He was placed at home on probation and contends: (1) that his motion to suppress evidence (Welf. & Inst. Code, § 700.1) should have been granted; and (2) that the trial court should have imposed sanctions for noncompliance with a pretrial discovery order. Neither contention has merit.

## THE FACTS

Viewed in accordance with the customary rule governing appellate review (*People* v. *Leyba* (1981) 29 Cal.3d 591, 596-598 [174 Cal.Rptr. 867, 629 P.2d 961]), the evidence at the hearing of the motion to suppress established the following facts leading to the discovery of a machete knife concealed on the minor's person.

On July 11, 1988, at Grant High School in Van Nuys, California, summer school was in session. Dean of students, Daniel Gruenberg, heard some

yelling of gang slogans and noticed a group of students including known members of the "Vineland Street Boys" running toward another group of students identified with the "North Hollywood Boys." To prevent a clash, Gruenberg separated the two groups and ordered them to accompany him to the school office. An unidentified member of the Vineland Street Boys said, "Don't pick on us; one of those guys has a gun." He gestured toward a third group of five or six students who had not been directly involved in the confrontation but who had remained on the fringe yelling and making gang signs. Appellant was in this group.

Officer James Beauregard of the Los Angeles Unified School District Police Department was standing nearby. Gruenberg directed the officer to "Check the group over there. One of them is supposed to have a weapon." The dean took the two groups of students involved in the confrontation to his office while Officer Beauregard ordered the third group to sit on the curb and another officer began to search each student for weapons.

During the investigation, appellant and another boy began talking. Officer Beauregard told them to be quiet. Appellant stood up. The officer ordered him to sit down. Instead of complying, appellant turned away from Officer Beauregard and started to step away. In the course of wrestling appellant to the ground, the officer noticed a black handle sticking out from the belt underneath the pants. Appellant was handcuffed and a machete knife and scabbard were removed from inside his trouser leg.

DISCUSSION

I

 In a virtual treatise on search and seizure, appellant in essence disputes the existence of probable cause to justify the officer's conduct. He asserts, inter alia, that a lawful search for weapons could not be based on uncorroborated information imparted by an unidentified informant.

 State and federal constitutional prohibitions against unreasonable searches and seizures apply to the actions of public school authorities as well as law enforcement officers. (*New Jersey* v. *T.L.O.* (1985) 469 U.S. 325, 336-337 [83 L.Ed.2d 720, 731-732, 105 S.Ct. 733]; *In re William G.* (1985) 40 Cal.3d 550, 561 [221 Cal.Rptr. 118, 709 P.2d 1287].) However, in order to strike a balance between the student's legitimate expectation of privacy and the school's need to maintain a safe and secure environment in which learning can occur, in the school setting, "strict adherence to the require-ment that searches be based on probable cause" is not required. (*New Jersey* v. *T.L.O.*, *supra*, at p. 341 [83 L.Ed.2d at p. 734]; see also *In re William G.*,

*supra*, at p. 562.) The search of a student by a teacher or other school official will ordinarily withstand constitutional scrutiny whenever "there are reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating either the law or the rules of the school." (*New Jersey* v. *T.L.O.*, *supra*, at p. 342 [at 83 L.Ed.2d p. 735]; see also *In re William G.*, *supra*, at p. 564.) A search on school grounds is permissible in its scope when "the measures adopted are reasonably related to the objectives of the search and not excessively intrusive in light of the age and sex of the student and the nature of the infraction." (*New Jersey* v. *T.L.O.*, *supra*, 469 U.S. at p. 342 [83 L.Ed.2d at p. 735].)

Officer Beauregard detained appellant with the intention to effect a search for weapons at the explicit request of the dean of students. He did so based upon information received by the dean that someone in appellant's group was reportedly in possession of a gun or other weapon. The gun accusation was made at the time of the fracas, by another summer school student, not by an anonymous tipster.[1]

The fact that the student's name was either not obtained by school authorities, or obtained and later forgotten was only one of many factors bearing on the reasonableness of the search. Of greater importance is the fact that the gravity of the danger posed by possession of a firearm or other weapon on campus was great compared to the relatively minor intrusion involved in investigating the veracity of the unidentified student's accusation against a handful of high school age boys.

Furthermore, article I, section 28, subdivision (c) of the California Constitution provides: "All students and staff of public primary, elementary, junior high and senior high schools have the inalienable right to attend campuses which are safe, secure and peaceful." (See also *In re William G.*, *supra*, 40 Cal.3d at p. 574 (dis. opn. of Mosk, J.); *In re Frederick B.* (1987) 192 Cal.App.3d 79, 85-86 [237 Cal.Rptr. 338].) Our Supreme Court has recognized that "the responsibility of school officials for each of their charges, the children, is heightened as compared to the responsibility of the police for the public in general." (*In re William G.*, *supra*, 40 Cal.3d at p. 563.) Under the totality of circumstances, a cursory search of appellant and others in his group for dangerous weapons was not only reasonable, it was constitutionally compelled.

Appellant also argues that an accusation directed at a group of students did not furnish reasonable cause to believe that he, in particular, might be in

---

[1] Since the search of appellant and his companions was undertaken by police at the request of a school official, we need not consider the appropriate standard for assessing the legality of searches undertaken by school officials at the behest of police. (See *New Jersey* v. *T.L.O.*, *supra*, 469 U.S. at p. 341, fn. 7 [83 L.Ed.2d at p. 735].)

possession of a weapon. ■ "[A]lthough 'some quantum of individualized suspicion is usually a prerequisite to a constitutional search or seizure[,] . . . the Fourth Amendment imposes no irreducible requirement of such suspicion.' [Citations.]" (*New Jersey* v. *T.L.O.*, *supra*, 469 U.S. at p. 342, fn. 8 [83 L.Ed.2d at p. 735].) ■ Here, suspicion was focused on a group of five or six students. Given the potential danger to students and staff which would have resulted from inaction, a weapons search of the several accused students was reasonable.

Our determination that the dean of students acted reasonably in ordering a search of appellant's person for weapons disposes of the contention that appellant had no obligation to cooperate with an unlawful police investigation. Officer Beauregard was justified in blocking appellant's attempt to thwart the impending weapons check. (*In re Frederick B.*, *supra*, 192 Cal.App.3d at p. 87.) "No Fourth Amendment interest or principle was violated when in the course of doing so [Officer Beauregard] fortuitously discovered the weapon in [appellant's] waistband." (*Ibid.*)

## II

■ Appellant also assigns as error the trial court's refusal to impose sanctions for noncompliance with pretrial discovery. A brief summary of the relevant facts suffices.

Prior to the adjudication, defense counsel was granted discovery of all oral and written statements of prosecution witnesses. Counsel received a copy of the police report prepared by investigating school district officers and was furnished some quantum of other information in compliance with the discovery order. The investigation report omitted to mention the accusation by one of the detained "Vineland Street Boys" that someone had a weapon or a gun, and counsel was not apprised orally of the statement. Dean Gruenberg was unaware of the omission.

Surprised by Dean Gruenberg's damaging testimony about the gun possession allegation at the hearing of the motion to suppress, counsel was granted a continuance of two months for additional preparation and investigation. When proceedings resumed, defense counsel made a motion for sanctions for noncompliance with pretrial discovery because Dean Gruenberg did not know the identity of the student who had made the gun accusation, could not locate any record of his identity, and could no longer recall, five months after the incident, what, if anything, he had done to make a record of the student's identity. The court denied the motion upon

finding that there had been no negligent destruction or failure to preserve the accusing youth's identity and that Dean Gruenberg had no obligation to collect and preserve such information for the defense.

Appellant asserts that the sanction of dismissal must be imposed because he was irreparably damaged by the prosecution's failure to advise him of the informant's accusation at the time discovery was initially ordered. It is argued that the identity of the person who allegedly made the gun accusation could have been ascertained at the time of the discovery order because summer school was still in session at Grant High School; by the time the statement was revealed, however, the identity of the informant was forever lost. Appellant evidently hoped to locate the alleged informant to prove that the gun possession accusation was never in fact made; ergo, there was no probable cause to support a search for weapons.

Appellant misconceives his rights under *California* v. *Trombetta* (1984) 467 U.S. 479 [81 L.Ed.2d 413, 104 S.Ct. 2528]. ■ The police have no obligation to gather up all evidence which might eventually prove useful to the defense. (*People* v. *Hogan* (1982) 31 Cal.3d 815, 851 [183 Cal.Rptr. 817, 647 P.2d 93].) The prosecution's duty to preserve evidence is limited to items " 'expected to play a significant role in the suspect's defense.' " (*People* v. *Johnson* (1989) 47 Cal.3d 1194, 1233 [255 Cal.Rptr. 569, 767 P.2d 1047].) To meet this standard of constitutional materiality, the evidence must possess " 'an exculpatory value that was apparent before the evidence was destroyed . . . .' " (*Ibid.*; citations omitted.) ■ The identity of the student informant was sought for the sole purpose of assisting in appellant's attack on the probable cause supporting his detention and search. As such, the informant was not a material witness on the issue of guilt (see *People* v. *Hardeman* (1982) 137 Cal.App.3d 823, 831-832 [187 Cal.Rptr. 296]) and the police and prosecution had no obligation to ferret out and preserve information establishing his identity.

We find highly speculative the suggestion that appellant might have been able to prove that no gun accusation in fact was made had information about the statement been imparted sooner. In any event, the proper remedy for the inadvertent noncompliance with a pretrial discovery order is the granting of a continuance to allow the defense an adequate opportunity to counter new evidence. (*People* v. *Reyes* (1974) 12 Cal.3d 486, 502 [116 Cal.Rptr. 217, 526 P.2d 225].) The generous continuance granted by the trial court was adequate for this purpose. The trial court's refusal to dismiss the matter, or exclude evidence as a sanction for noncompliance with discovery, was entirely proper.

The order of wardship is affirmed.

Roth, P. J., and Gates, J., concurred.